IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

June 25, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

BONNIE ROACH,                    )    KNOX CHANCERY
                                 )    C.A. NO. 03A01-9711-CH-00517
                                 )
        Plaintiff-Appellant      )
                                 )
vs.                              )
                                 )    HON. FREDERICK D. McDONALD
                                 )    CHANCELLOR
                                 )
JAMES V. RENFRO and              )
TTI, INC.,                       )
                                 )
        Defendant-Appellee       )


 and


TTI, Inc.,                       )
                                 )
        Plaintiff                )
                                 )
                                 )
vs.                              )
                                 )
                                 )
                                 )
DOYLE MARTIN,                    )    AFFIRMED IN PART AND REMANDED
                                 )    WITH INSTRUCTIONS
        Defendant                )


LEWIS A. COMBS, JR., Knoxville, for Appellant.


DUDLEY W. TAYLOR, The Taylor Law Firm, and JIMMY KYLE DAVIS, Knoxville, for Appellee.

McMurray, J.

These consolidated cases involves a dispute over the rights to possession and ownership of certain real estate parcels in Knox and Loudon Counties and for damages claimed to have been suffered by the wrongful cutting of timber. The plaintiff, Bonnie Roach, and defendant, James V. Renfro, lived together for over a decade, during which time Renfro was legally married to someone else. Several parcels of land were acquired during the course of the parties' cohabitation. All but one of the parcels were titled in the name of TTI, Inc., a company owned by Renfro. In 1995, approximately sixteen years after the parties ceased cohabitation, during which time Roach had lived on and maintained the property in question, she filed a complaint for declaratory judgment seeking a declaration that she owned the property. The trial court held that: (1) Roach had no interest in the parcels titled in TTI's name, and (2) that she and Renfro owned, as tenants in common, the parcel titled in both their names. Roach appeals the first part of the judgment, and Renfro appeals the second. We affirm the trial court's judgment.

The record reveals the following facts. Renfro was married to Pearl Leo Renfro in 1938. This marriage lasted until their divorce

on April 16, 1984. Renfro and Roach met during the early 1960s, and began living together in 1964 or 1965. Roach testified that she knew then that Renfro was married to Pearl Renfro. On July 12, 1965, Renfro acquired a twelve acre parcel by warranty deed from William A. Wise, Jr. (the "Wise parcel"). It is undisputed that Renfro paid for the Wise parcel. The deed was recorded on July 13, 1965, and subsequently title was transferred from Renfro to TTI in 1966.

A residence was constructed on the Wise parcel at Renfro's expense. Construction was completed in November of 1967. Roach and Renfro lived together in this house until early 1979.

On April 22, 1967, TTI acquired title, by warranty deed, to a seven acre parcel (the "first McAnally parcel") from Ruth McAnally. It is undisputed that either Renfro or TTI paid for the first McAnally parcel, which was located across the road from the Wise parcel. The deed to the first McAnally parcel was recorded on April 25, 1967.

On December 15, 1973, TTI acquired by warranty deed a 37.3 acre parcel adjacent to the Wise parcel (the "Harvey parcel") from Clara Harvey. As with the first McAnally parcel, either Renfro or TTI paid for the acquisition of the Harvey parcel. Title was

3

placed in TTI's name and the deed was recorded on December 19, 1973.

On October 22, 1969, the parties entered into the transaction about which there is substantial factual controversy. A 35 acre parcel (the "second McAnally parcel"), adjacent to the first McAnally parcel, was acquired from Ruth and Elmer McAnally by warranty deed. Renfro testified that he was unable to attend the closing because of business engagements, and so he gave Roach $25,000.00 (the purchase price) and she handled the transaction. Roach testified that she paid the $25,000.00 out of her own funds, and that Renfro was to pay her back half the purchase price.

On the warranty deed to the second McAnally parcel, the grantees are listed as "Bonnie Roach Renfro and husband, James V. Renfro." Renfro testified that his understanding was that the property would be titled in TTI's name. Renfro stated that when he asked Roach whether the deed had been recorded, she told him it had been lost. The deed to the second McAnally parcel was not recorded until August 26, 1996, after this litigation commenced. Roach testified that she kept the deed in her safe deposit box during the period between the transfer and the time it was recorded.

As noted earlier, the parties lived together in the residence on the Wise parcel from the mid-1960s until 1979. The parties

4

stipulated that "[t]he relationship between Roach and Renfro became increasingly volatile. This volatility included the shooting of Renfro by Roach, and although medical attention was required, Renfro was not seriously injured." Renfro subsequently left the residence on the Wise parcel in early 1979, taking nothing with him. He testified that he left because he feared for his safety. He never returned to the residence and has had minimal contact with Roach since he left.

Roach testified that after the parties separated, she and Renfro orally agreed that she could have the Wise, Harvey and McAnally parcels, as long as she would agree not to try to acquire any interest in his businesses. She asserts her reliance on this alleged oral agreement in support of her insistence that she rightfully owns the properties in question. Renfro denies ever making an agreement of any kind. When asked why he continued to let Roach live in the Wise residence, he responded, "I didn't need the house for anything. Just left it that way for the time being."

Roach continued to live in the residence following the end of the relationship. She also maintained general control over the Harvey and McAnally parcels. Roach provided for the upkeep and maintenance of the Wise residence, but never paid any rent. Renfro paid the property taxes and insurance expenses on the Wise parcel, the Harvey parcel and the first McAnally parcel. On one occasion,

5

Roach called him and asked him to put a new roof on the Wise residence. Renfro complied with this request. Roach testified that she paid the property taxes and insurance expenses on the second McAnally parcel.

The relationship continued in this fashion until 1994, when Renfro discovered that Roach had contracted to have timber cut from the Harvey parcel. Roach contracted with Doyle Martin to cut certain hardwood trees and a stand of pine trees, and they agreed to split the profits from the sale of the hardwood timber. Martin agreed to pay her $8.00 per cord of the pine wood. Martin cut the pine stand and between 50 and 60 hardwood trees.

When Renfro discovered the logging, he told Martin "that's my timber you're cutting." Martin did not thereafter cut any more timber. Shortly thereafter, Renfro filed a detainer action against Roach in the Knox County General Sessions Court. Roach filed her complaint for declaratory judgment in Knox County Chancery Court, and the two actions were consolidated. Defendant TTI filed a counter-complaint for ejectment against Roach.

At trial, Roach argued that the doctrines of laches and equitable estoppel operated to preclude TTI and Renfro from asserting ownership of the property at issue. In the alternative, she asserted that the court should find that a constructive or

6

resulting trust for her benefit had arisen in the property. Roach also argued that the applicable statute of limitations barred TTI from initiating its ejectment action.

Renfro and TTI argued that Roach had no interest in any of the parcels, and that title to the second McAnally parcel in the name of "Bonnie Roach Renfro and husband, James V. Renfro" was fraudulently obtained by Roach. In the alternative, Renfro and TTI argued that the court should find a constructive trust arose in the second McAnally parcel for TTI's benefit.

After a bench trial, the trial court found that the evidence "falls far short" of establishing Roach's laches, equitable estoppel and constructive trust claims. The court found that TTI owned the Wise, Harvey and first McAnally parcels. The court held that the ten-year statute of limitations applicable to ejectment actions had not run, and therefore did not bar TTI's ejectment action. The court granted TTI's counterclaim for ejectment regarding the Wise, Harvey and first McAnally parcels. The court, noting that title to the second McAnally parcel was in both parties' names, and finding that Renfro's proof did not establish fraud on Roach's part, held that the parties owned that parcel as tenants in common. The court held that TTI was entitled to the sum of $4,201.78 for the timber cut on the Harvey parcel, which amounted to Roach's half of the profits from the sale of the

hardwood timber, and which Martin had deposited with the court pending its final decision.

Both parties appeal the trial court's judgment. Roach raises the following issues for our review:

1.  Did the court err in refusing to invoke the doctrines of laches and equitable estoppel on Roach's behalf?

2.  Did the court err in refusing to establish a constructive or resulting trust for Roach's benefit?

3.  Did the court err in not barring TTI's ejectment action when it was initiated more than ten years after Roach challenged Renfro's right to immediate possession of the properties?

Renfro and TTI raise these additional issues on appeal:

4.  Are all of Roach's claims barred by the statute of limitations and/or the statute of frauds?

5.  Did the court err in determining that Roach has a beneficial interest in the second McAnally parcel?

6.  Is Renfro entitled to the remedy of ejectment in the alternative that this court upholds the finding that the second McAnally parcel is held by Roach and Renfro as tenants in common?

7.  Are Renfro and TTI entitled to damages for the timber cutting in excess of the $4,201.78 awarded by the trial court?

We first address Roach's claims of laches and equitable estoppel. Roach relies on the same facts alleged to establish either or both of these equitable doctrines, which are quite similar in nature. See Elvis Presley Int'l. Memorial Foundation

8

v. Crowell, 733 S.W.2d 89, 101 (Tenn. App. 1987) ("The defense of laches is based upon the doctrine of equitable estoppel.").

As noted above, Roach asserts that the parties reached an oral agreement whereby Renfro agreed to give her title and ownership of the Wise, Harvey and McAnally parcels in exchange for her agreement not to try to gain an interest in any of his business endeavors. Enforcement of this alleged agreement is probably barred by the statute of frauds.[1] However, "[e]quitable estoppel is an exception to the Statute of Frauds." Beazley v. Turgeon, 772 S.W.2d 53, 58 (Tenn. App. 1988). The elements of equitable estoppel were set forth in Robinson v. Tennessee Farmers Mut. Ins. Co., 857 S.W.2d 559, 563 (Tenn. App. 1993), as follows:

> The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially, 19 Am.Jur.Estoppel Sec. 42, pp. 642-643.

Id.

---

[1] T.C.A. § 29-2-101(4).

Under the facts of this case, we find that a person in Roach's position could not have reasonably reached a conclusion other than that Renfro was allowing her to stay on the property and live in the Wise residence without rent, but that ownership of the Wise, Harvey and first McAnally parcels remained with Renfro and TTI. In other words, the evidence preponderates in favor of a finding that Roach knew she was a tenant at will on these parcels. The existence of the alleged oral agreement is a controverted question of fact, heavily dependent on determinations of credibility, which is the province of the trial court.

It is undisputed that Roach knew that Renfro and/or TTI provided the entirety of the purchase price for these parcels. Roach knew that Renfro was paying the property taxes and insurance expenses during the time she lived in the Wise residence and maintained the other properties, and she requested that he put a new roof on the residence, which he did. Finally, she made no attempt to have title transferred to her name, even after the alleged agreement, although she was aware that the warranty deeds to these parcels listed TTI as the owner. Her actions were wholly inconsistent with a position or understanding that she owned the properties outright. Under these facts, we agree with and affirm the trial court's holding that laches and equitable estoppel are inapplicable to this case.

10

We now turn to Roach's resulting and constructive trust theories. Tennessee courts have stated the following regarding the doctrine of resulting trust:

> "Resulting trusts are those which arise where the legal estate is disposed of, or acquired, without bad faith, and under such circumstances that Equity infers or assumes that the beneficial interest in said estate is not to go with the legal title. These trusts are sometimes called <u>presumptive</u> trusts, because the law presumes them to be intended by the parties from the nature and character of their transactions. They are, however, generally called <u>resulting trusts</u>, because the trust is the result which Equity attaches to the particular transaction. Gibson's Suits in Chancery, § 382 (6th Ed.1982).
>
> As a tool of equity, the resulting trust will be decreed when necessary "to prevent a failure of justice." 76 Am.Jur.2d <u>Trusts</u> § 196 (1975). In <u>Wells v. Wells</u>, 556 S.W.2d 769, 771 (Tenn. App. 1977), this court stated that such "trusts are judge-created trusts or doctrines which enable a court, without violating all rules of logic, to reach an interest in property belonging to one person yet titled in and held by another." <u>Wardell v. Dailey</u>, 674 S.W.2d 293, 295 (Tenn. App. 1983) (emphasis in original).

> "Resulting trusts arise: 1., When property is conveyed, or devised, on some trust which fails in whole or in part; 2., When land is conveyed to a stranger without any consideration, and without any use, or trust, declared; 3., <u>Where the property is purchased and the title taken in the name of one person, but the purchase price is paid by another</u>; and 4., <u>Where the purchaser pays for the land but takes the title, in whole or in part, in the name of another</u>."

> <u>Browder v. Hite</u>, 602 S.W.2d 489, 492 (Tenn. App. 1980), quoting <u>Gibson's Suits in Chancery</u> (5th ed.), §§ 976-977 (emphasis in original).

11

A resulting trust may be proved by parol evidence; however, "any oral statement purporting to create a resulting trust in property  must have been made prior to or contemporaneously with the transaction."  In re estate of Roark, 829 S.W.2d 688, 692 (Tenn. App. 1991).  Proof of a parol trust must meet a higher standard than a mere preponderance of the evidence.  The courts have enunciated this standard as requiring proof "of the clearest and most convincing character," Id. at 693, and "by the most convincing and irrefragable character."  Wardell, 674 S.W.2d at 295.

Roach has offered no proof tending to show that, at the time of the transfers of the Wise, Harvey and first McAnally parcels to TTI, Renfro evinced any intent to set up a trust for her benefit.  Regarding payment, she stipulated that she did not provide any payment for these tracts of land.  It follows that her resulting trust theory is without merit.

It is well-established that a constructive trust

> arises contrary to intention and in invitum [against an unwilling party], against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

12

Central Bus Lines v. Hamilton Nat. Bank, 239 S.W.2d 583, 585 (Tenn. App. 1951); Sanders v. Forcum-Lannom, Inc., 475 S.W.2d 172, 174 (Tenn. 1972).  In Intersparex Leddin KG v. Al-Haddad, 852 S.W.2d 245 (Tenn. App. 1992), the court noted:

> Tennessee has imposed constructive trusts in four types of cases.  They are:  1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner;  2) where the title to property is obtained by fraud, duress or other inequitable means;  3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained;  and 4) where a person acquires property with notice that another is entitled to its benefits. Gibson's Suits in Chancery § 383 (7 ed. 1988).

Id. at 249.

Roach has not alleged that TTI or Renfro acted fraudulently, in bad faith or in other fashion which would trigger the constructive trust doctrine.  She relies only upon the alleged oral agreement, which occurred, if at all, more than a decade after the transactions.  We concur with the trial court that Roach has failed to prove such circumstances as would warrant the application of a constructive trust in her favor.

Roach argued at trial that TTI's ejectment action was time-barred by the ten-year statute of limitations found at T.C.A. § 28-3-110(3).  The right to maintain an ejectment action is

13

provided at T.C.A. § 29-15-101 <u>et seq.</u> The ejectment statute contains no applicable statute of limitations, and thus Roach argued for the application of T.C.A. § 28-3-110(3), which states: "The following actions shall be commenced within ten (10) years after the cause of action accrued: ... (3) All other cases not expressly provided for." The trial court found the following regarding this argument:

> Bonnie Roach asserts the 10 year statute of limitations in defense of the ejectment action brought against her. She was in possession of the property in question for over 10 years before this suit began; however, her possession for most of that time was with the permission of the owner. Not until she had trees cut on the premises, much less than 10 years before the ejectment action was asserted, was her permissive holding treated as ended and ejectment sought. Thus, 10 years not having elapsed before the cause of action arose, the statute of limitations did not run, and her defense is not good. Accordingly, the claim for ejectment is meritorious, and will be granted.

Renfro and TTI argue on appeal that there should not be a statute of limitations for ejectment actions, or in the alternative, the limitations period should not be shorter than the 20-year period necessary to establish an adverse possession claim. <u>See</u>, <u>e.g.</u>, <u>Preston v. Smith</u>, 293 S.W.2d 51, 53 (Tenn. App. 1956). We need not decide this question in the present case, because assuming <u>arguendo</u> that the ten-year statute of limitations found at T.C.A. § 28-3-110(3) applies, the trial court was correct in reasoning that it could not have commenced running until Roach was requested to vacate the land after Renfro discovered that timber

14

had been cut.  Until that point, Roach was living in the Wise residence and maintaining the other parcels with Renfro's acceptance and permission.  The unauthorized cutting of timber is the earliest action taken by Roach which would arguably trigger the ten-year limitations period.

Renfro and TTI argue that the court erred in not establishing a resulting or constructive trust for TTI's benefit in the second McAnally parcel.  Regarding the resulting trust issue, we note that there was a factual controversy at trial over who paid for this parcel.  The trial court held that TTI's proof fell short of the "clear and convincing" standard required to prove an oral resulting trust in the face of a written deed to the contrary.  The trial court also held that TTI did not present sufficient proof to establish fraud on Roach's part, precluding the application of the constructive trust doctrine.

Roach testified that she paid for the property taxes and insurance expenses on the second McAnally parcel.  Although it was stipulated that Renfro paid these expenses on the other three parcels, he did not specifically testify regarding payment on the second McAnally parcel.  The trial court noted that although Roach told Renfro the deed was lost, he took no action to acquire a replacement deed, or to inquire about the state of title to the second McAnally parcel, for over 27 years.  Given these facts, the

evidence does not preponderate against the trial court's refusal to hold a resulting or constructive trust arose in favor of TTI.

A tenant in common, such as Renfro, cannot maintain an ejectment action "in the absence of a showing that he has been ousted from possession or his right to participate in the enjoyment of the property has been denied." <u>Garland v. Holston Oil Co.</u>, 386 S.W.2d 914, 915 (Tenn. App. 1964). Such a showing was not made in this case; it has not been suggested that Renfro tried to "participate in the enjoyment of his property" until this litigation ensued. As the trial court held, Renfro cannot maintain an action to eject Roach from the second McAnally parcel.

Finally, TTI argues that it is entitled to a greater amount of damages for the timber than the $4,201.78 awarded by the trial court. Renfro asserts the applicability of T.C.A. § 43-28-312, which states in pertinent part, "[c]ivil liability for the negligent cutting of timber from the property of another is in an amount double that of the current market value of the timber." "(b) Civil liability for knowingly and intentionally cutting timber from the property of another is in an amount treble that of the current market value of the timber." Regarding the timber cut from the Harvey parcel, the trial court found the following:

> The evidence is overwhelming that Mr. Renfro has
> permitted Mrs. Roach to live on the property in the

16

home for many, many years, and it was fair for Mr. Martin to assume her to be the owner, or at least the person with the right to contract the removal of the timber. There is no evidence that a timber cutter is subject to any practice in that trade or industry to have title to real estate checked whenever timber is taken off. There was nothing to alert Mr. Martin he should do this, and he certainly acted reasonably. We find he was guilty of no fault in taking the timber.

*    *    *    *

[Renfro] left her in possession of the property, and she ran some cattle on the property, and treated it as if not her own, as property she was able to control. She made improvements to the house, she paid taxes on the [second McAnally] parcel, and we understand the [Wise, Harvey and first McAnally] parcel[s] were paid by Mr. Renfro's companies.

Under those circumstances, until she was told that timber could not be removed, we think she acted reasonably and did not act tortiously or in violation of any understanding between the parties. Timber removal stopped as soon as Mr. Renfro made complaint. If she continued to have timber removed thereafter, then he or [TTI] would be entitled to recover.

*    *    *    *

Mrs. Roach was left in charge of the premises and certainly acted within reason. She was only attempting to clear land where the pines were to improve that area, and the evidence, such as there is in the matter, indicated the hardwood should have been removed, and the proceeds from the sale as we have already ruled go to TTI, since TTI owned the parcel.

We concur with these findings of the trial court and find that the evidence does not preponderate otherwise. The evidence dos not support a finding of either a negligent or intentional cutting of timber, but on the other hand, demonstrates that the cutting was done in good faith. Roach was allowed to lived on the

17

land and was clothed with apparent authority to contract to sell the timber. Under the circumstances of this case, equity requires that TTI be awarded the amount to which Roach was to receive under the contract with Martin. The trial court awarded TTI Roach's half of the fair market value of the hardwood timber, amounting to $4,201.78.

Under the contract with Martin, Roach was to receive $8.00 per cord for the pine timber. The court, however, did not make a determination as to the amount which Roach should have received under the contract for pine timber actually taken by Martin. This amount is not revealed by the record. We, therefore, deem it necessary to remand the case to the trial court for a determination of the amount paid and/or payable from Martin to Roach. That amount is recoverable by TTI. Hence, the trial court should ascertain the amount and the party or parties against whom a judgment should be entered in favor of TTI for that amount.

The trial court's judgment is in all other respects affirmed. In our discretion, costs on appeal are assessed equally between the parties.

_____
Don T. McMurray, Judge

18

CONCUR:


_____
Herschel P. Franks, Judge


_____
Charles D. Susano, Jr., Judge

IN THE COURT OF APPEALS
AT KNOXVILLE


BONNIE ROACH,              )    KNOX CHANCERY
                             )    C.A. NO. 03A01-9711-CH-00517
                             )
       Plaintiff-Appellant   )
                             )
vs.                         )
                             )    HON. FREDERICK D. McDONALD
                             )    CHANCELLOR
                             )
JAMES V. RENFRO and       )
TTI, INC.,             )
                             )
       Defendant-Appellee    )


 and


TTI, Inc.,            )
                             )
       Plaintiff         )
                             )
                             )
vs.                         )
                             )
                             )
DOYLE MARTIN,        )   AFFIRMED IN PART AND REMANDED
                             )   WITH INSTRUCTIONS
       Defendant         )


## JUDGMENT


    This appeal came on to be heard upon the record from the

Chancery Court of Knox County, briefs and argument of counsel.

Upon consideration thereof, this Court is of opinion that there was error in the trial court.

We remand the case to the trial court for a determination of the amount paid and/or payable from Martin to Roach.  That amount is recoverable by TTI, hence, the trial court should ascertain the amount and the party or parties against whom a judgment should be entered in favor of TTI for that amount.

The trial court's judgment is in all other respects affirmed. In our discretion, costs on appeal are assessed equally between the parties.


PER CURIAM


2