## LaFOLLETTE MEDICAL CENTER, et al.

v.

## The CITY OF LaFOLLETTE, Tennessee, et al.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Aug. 21, 2002 Session.

Feb. 4, 2003.

Permission to Appeal Denied by Supreme Court July 7, 2003.

Reid Troutman, LaFollette, Tennessee, for the appellant, The City of LaFollette, Tennessee.

David H. Dunaway, LaFollette, Tennessee, for the appellees, LaFollette Medical Center, et al.

## OPINION

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, Jr., JJ., joined.

This is a suit initiated by LaFollette Medical Center and its Board of Trustees against the City of LaFollette, seeking to prohibit the sale of LaFollette Medical Center without a consent of the Board of Trustees. The Trial Court, in a preliminary ruling, held that the City did have authority to sell the facility,[1] but that the proceeds of the sale would be held in trust to be used for one of the original purposes for which the Hospital was built—to render indigent health care. We affirm.

The City appeals, making four contentions:

1. The Plaintiffs do not have standing to prosecute the suit.
2. They are estopped from asserting the relief sought.
3. The Court erred in holding the Medical Center was a public benefit entity.
4. The court erred in imposing a constructive trust on the proceeds of the sales.

Notwithstanding the fact that the Trial Court sustained a motion for summary judgment relative to the constructive trust, the Defendants do not insist there is a dispute as to any material fact, but rather that the Chancellor misapplied the law to the facts developed, which are accurately detailed in the brief of the Medical Center with appropriate citations to the record:

The City of LaFollette was served by two small hospitals during the 1950s. One was called the doctors hospital and was run by M.L. Davis, M.D.; the other was called the LaFollette Hospital. Both were physician-controlled and operated.

In 1957, it was recommended to the mayor of LaFollette that a new hospital be built to replace the two existing facilities. That same year, the City Council

---

**1.** This determination is not appealed.

voted to apply for a Hill–Burton loan to help build the hospital. In addition, a referendum was held over the question of issuing bonds to help build the hospital. The referendum passed. The hospital was then built that same year.

The bonds themselves were paid back by the Medical Center rather than by the City. The City itself contributed no money toward the construction of the Medical Center.

In addition, the Medical Center's nursing home was built with Medical Center revenue. As in the case of the Medical Center itself, the City contributed no money toward the construction or operation of the Medical Center's nursing home.

The primary purpose for building the Medical Center in the first place was to provide health care for the citizens of the surrounding LaFollette area. The provision of indigent care underlay the original charter establishing the Medical Center; the goal was that no patient in need would be turned away from its doors. Indeed, since it was opened in 1957, the Medical Center has been operated solely for charitable purposes. In fact, like any charitable corporation, the Medical Center has never paid property taxes to either the City or Campbell County.

The actual creation of the Medical Center as a legal entity was accomplished by Chapter 236 of the 1957 Private Acts of the Tennessee Legislature. The Medical Center, formerly known as LaFollette Community Hospital was thus a hospital entity created by Chapter 236 of the 1957 Private Acts of the Tennessee Legislature.

As part of the Act, "a governing body of the LaFollette Community Hospital to be known as the Board of Trustees [was] hereby created." In addition, the Act provided "[t]hat it is the intention and purpose of this Act to place in the Board of Trustees *the exclusive* control, operation and management of the LaFollette Community Hospital." (Emphasis in original.)

Notwithstanding, the City Council met on February 15, 1999 to consider a sale of the Medical Center. The City Council then voted on April 13, 1999 to sell the Medical Center, without the consent of the Board of Trustees. A public hearing was scheduled for May 10, 1999 on the matter. The sale was formally approved by the City Council on April 27, 2000. The Medical Center was thereafter transferred to St. Mary's Health Systems, Inc./ LaFollette Medical Center, Inc., a for-profit corporation,[2] by way of a Lease and Purchase Option Agreement dated April 27, 2000.

The members of the Board of Trustees who were plaintiffs in this case were improperly removed, or sought to be removed, from their positions during this period. In fact, the trial court issued a Restraining Order, filed May 12, 1999, forbidding any such action.

When the trial court issued its Order approving the sale of the Medical Center, it specifically found "that the action of [the City] of removing the members of the Board of Trustees of [the] Medical Center is null and void." Accordingly, the court ordered the Board members "hereby reinstated to their position as members of the Board of Trustees."

As noted above, this sale was undertaken pursuant to court order. At the same time the sale proceeds were ordered to be sequestered. The City now seeks judicial disapproval in this Court

---

**2.** The lease purchase agreement referred to St. Mary's as a not-for-profit corporation.

of the finding below that the sales proceeds are subject to a constructive trust.

In support of the Plaintiffs' Motion for Summary Judgment which was filed in this cause, the Plaintiffs filed a Statement of Undisputed Facts on May 15, 2001. The Defendants filed a Response to Plaintiffs' Undisputed Statement of Facts on July 5, 2001. The following facts can be deemed admitted by the Court for purposes of this appeal.

Since its inception, the LaFollette Medical Center has been operated for charitable use. Indigent care is a concern in the original charter in establishing the LaFollette Medical Center.

On July 9, 2001, the Trial Court found that the LaFollette Medical Center was a public-benefit entity and that a constructive trust should be imposed upon the proceeds from the sale and/or transfer of all assets of the LaFollette Medical Center. The Court found specifically, "This is a constructive public benefit trust, and no part of these assets should be used for any purpose other than general healthcare of this community, indigent care. This was the original intent and I think the proceeds of this matter should be dedicated to that purpose...." Seriously, 10 years down the road we may need a new hospital. This money plus interest might be enough to make a huge step in that direction. If we take the interest away, time would dissipate the principal. At the time of the sale of the assets of the LaFollette Medical Center to St. Mary's Health Systems, Nine Million Two Hundred and Forty–Eight Thousand, Five Hundred and Thirty–Eight Dollars ($9,248,538.00) was being held by the City of LaFollette. While the Trial Court held that this money should immediately be paid to the Clerk and Master to be administered and secured for the purpose of general healthcare, the City of LaFol-

lette has failed and refused to pay this money to the Clerk and Master. This Motion has been stayed pending the Defendants' appeal.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Tenn. R.App.P. 13(d). We must honor that presumption unless we find that the evidence preponderates against the trial court's factual findings. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are not accorded the same deference. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996).

█ As to the issue regarding standing, a lucid exposition of the rule is found in *Wamp v. Chattanooga Housing Authority*, 384 F.Supp. 251 (E.D.Tenn.1974), at page 255:

> The rule in Tennessee is well established that citizens and taxpayers are without standing to maintain a lawsuit to restrain or direct governmental action unless they first allege and establish that they will suffer some special injury not common to citizens and taxpayers generally. *Patten v. City of Chattanooga*, 108 Tenn. 197, 65 S.W. 414 (1901). The reasons for the rule, as given in the *Patten* case, were variously stated to be that "Courts do not sit to declare abstract propositions of law" and that, "[in matters common to all citizens], the law confers upon the duly-elected representatives of the people the sole right to appeal to the courts for redress" and that "if cities could not exercise public powers, even erroneously or unwisely, when lawfully done by their constituted legislative authority, without the concurrence of every citizen or taxpayer, it

would be impossible to have municipal governments...." In the rather recent case of *Badgett v. Rogers*, 222 Tenn. 374, 436 S.W.2d 292 (1968), the Tennessee Supreme Court stated the rule to be as follows:

"As a general rule of long standing in Tennessee, individual citizens and taxpayers may not interfere with, restrain or direct official acts, when such citizens fail to allege and prove damages or injuries to themselves different in character or kind from those sustained by the public at large."

The Plaintiffs contend, however, that the allegations and facts in the present case bring them within an exception to the general rule, that exception being that a taxpayer may sue without averring or establishing any special injury where an illegal use of public funds is involved. The exception relied upon by the plaintiffs is stated as follows in *Badgett v. Rogers, supra*, 436 S.W.2d 292 at 294:

"However, the courts have recognized an exception to the general rule where it is asserted that the assessment or levy of a tax is illegal or that public funds are misused or unlawfully diverted from stated purposes."

The Defendants insist that because the Hospital was ordered sold by the Trial Court there was no longer an entity which requires Trustees and, consequently, the Plaintiffs lost standing to further pursue their suit. It is noteworthy in this regard that the Trial Court reinstated the Trustees, which we believe would cure any infirmity as to their proceeding, if such existed.

Moreover, as to this point, at least one Federal case, *Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir.2000), holds that standing is determined as of the date of the filing of the complaint, and certainly it would appear that the Plaintiffs had standing at that time.

■ Regarding estoppel, the case of *Roach v. Renfro*, 989 S.W.2d 335, 339 (Tenn.Ct.App.1998), quotes with approval from an earlier case and accurately states the doctrine:

The elements of equitable estoppel were set forth in *Robinson v. Tennessee Farmers Mut. Ins. Co.*, 857 S.W.2d 559, 563 (Tenn.App.1993), as follows:

The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially. 19 Am.Jur.Estoppel Sec. 42, pp. 642–643.

The Defendants argue that because some of the Plaintiffs made an offer to purchase the property they somehow are estopped to object to its sale. We first observe that the property was ultimately sold and no question is made in this appeal as to the action of the Trial Court in ordering the sale. This being the case, it could hardly be argued that the doctrine of estoppel plays any part in the sale of the property.

We recognize that later the Trial Court impressed a constructive trust on the proceeds of the sale, and we assume the Defendants contend that the doctrine of estoppel bars the Plaintiffs' insisting that the Trial Court's action was proper. Upon reviewing the elements of estoppel, we cannot see how their action in bidding on the property would preclude the Plaintiffs from insisting that upon sale the proceeds be used for a particular purpose.

■ Regarding whether the Medical Center was a public benefit entity or a mutual benefit entity, as addressed in T.C.A. 48–68–104, the parties spend much of the space in their briefs arguing this point. The City contends that to be a public benefit entity or a mutual benefit entity, the entity must be a corporation and that the Medical Center was not.[3] The Plaintiffs contend that it was indeed a corporation. We have reviewed the statutes relied upon by the City and find nothing in them that would deny funds from the sale of the Hospital to be placed in trust. Indeed, if the criteria is met, a constructive trust could be placed insofar as an individual, corporation, or entity is concerned, and we do not feel that a determination as to the status of the Hospital, *vis-a-viz*, the statutes referenced are of any particular significance in determining the ultimate question presented by this appeal.

Finally as to this point, it may be, as insisted by the City, that the Medical Center was not in fact a corporation. However, we do not find this to be determinative. Indeed, if the criteria is met it would seem to us a constructive trust might be impressed for the benefit of an individual, a corporation, an association, a partnership, or any other legal entity.

■ As to the propriety of the Trial Court impressing a constructive trust on the proceeds of the sale, the case of *Roach v. Renfro, supra,* 989 S.W.2d 335, 340 (Tenn.Ct.App.1998), quotes from an earlier case to this effect:

In discussing constructive trusts our case law in this State has stated the following:

It is well-established that a constructive trust arises contrary to intention and *in invitum* [against an unwilling party], against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*Central Bus Lines v. Hamilton Nat. Bank,* 34 Tenn.App. 480, 239 S.W.2d 583, 585 (1951); *Sanders v. Forcum–Lannom, Inc.,* 225 Tenn. 637, 475 S.W.2d 172, 174 (1972).

We conclude that given the fact that no City funds were used in the construction of the Hospital and no funds were received by the Hospital that would otherwise have gone to the City, it would be "unconscionable conduct" for the City to insist that the proceeds of the sale be used for any general purpose the City might choose.

In summary, it would appear the City is attempting to reap where it has not sown.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for such further proceedings, if any, as may be necessary and for

---

**3.** The City's insistence is based upon the fact that there was no proof in the record "as to a duly executed corporate charter filed with the Tennessee Secretary of State, nor proof of a certificate of existence from the Tennessee Secretary of State."

collection of costs below. Costs of appeal are adjudged against the City and its surety.