# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 18, 2008 Session

## FRANKIE LEWIS, ET AL. v.
## CLEVELAND MUNICIPAL AIRPORT AUTHORITY, ET AL.

**Appeal from the Circuit Court for Bradley County**
**No. V-06-857     John B. Hagler, Jr., Judge**

_____

**No. E2007-00931-COA-R3-CV - FILED SEPTEMBER 11, 2008**

_____

This lawsuit challenges actions by the Cleveland Municipal Airport Authority (the "Airport Authority") and the Bradley County Commission (the "Commission") involving the rezoning by the Commission of certain property located in Bradley County from Forestry Agricultural Residential to Special Impact Industrial. The Airport Authority intends to relocate the Cleveland Municipal Airport to the rezoned property. Frankie Lewis originally filed this lawsuit and Herbert Haney was added later as a plaintiff. As pertinent to this appeal, the Trial Court determined that Lewis lacked taxpayer standing to bring this lawsuit against the Airport Authority and granted the Airport Authority's motion to dismiss. Lewis appeals the dismissal of his lawsuit against the Airport Authority. As to the Commission, both plaintiffs allege statutory and procedural violations surrounding notice of the requested rezoning and the conduct of the Commission in eventually granting the request for rezoning. The Trial Court granted the Commission's motion for summary judgment after concluding that there were no genuine issues of material fact and the Commission was entitled to a judgment as a matter of law. Both Lewis and Haney appeal that summary judgment. We conclude that the Trial Court did not err in granting the Airport Authority's motion to dismiss and the Commission's motion for summary judgment. The judgment of the Trial Court is, therefore, affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
### Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Richard A. Fisher, Cleveland, Tennessee, for the Appellants, Frankie Lewis and Herbert J. Haney, on behalf of themselves and others similarly situated.

Ronald D. Wells and Stacy Lynn Archer, Chattanooga, Tennessee, for the Appellee, Cleveland Municipal Airport Authority.

Robert S. Thompson, Cleveland, Tennessee, for the Appellee, Bradley County Commission.

# OPINION

## I. Background

This appeal involves a challenge to the relocation of the municipal airport in Cleveland, Tennessee. On October 19, 2006, Plaintiff Lewis filed a "Petition for Writ of Certiorari, Declaratory Judgment and Injunctive Relief" against the Airport Authority and the Commission. According to the petition, as amended:

> The Airport Authority is attempting to relocate the Cleveland Municipal Airport from the current location within the Cleveland city limits (Hardwick Field) to a new location on Michigan Avenue Road, Dry Valley Road and Tasso Road in Bradley County and outside the Cleveland city limits (the "Tasso Site"). The proposed new location must be rezoned from Forestry Agricultural Residential District ("FAR") to Special Impact Industrial District ("I-2") for use as an airport.

> * * *

> Plaintiff will be adversely affected by the rezoning of the Tasso Site from Forestry Agricultural Residential District ("FAR") to Special Impact Industrial District ("I-2") for use as an airport. He is filing this lawsuit on behalf of himself and others similarly situated, that is, homeowners and residents adjacent to or in the immediate vicinity of the Tasso Site who will be damaged by the construction and operation of an airport, including plane noise pollution, increased traffic congestion, depressed property value and loss of the quiet and peaceful enjoyment of their homes and the additional tax burden that will be imposed on the citizens of Bradley County, the State of Tennessee, and the United States government.

> Plaintiff and others have been denied due process by failure of the Airport Authority to follow statutory procedure, rules and regulations on their selection of the Tasso Site for a new municipal airport and by failure of the Bradley County Commission to follow statutory requirements and mandatory procedural prerequisites necessary to change zoning of the Tasso Site.… Plaintiff avers he and other citizens have been denied the opportunity to fairly present their objections to rezoning of the Tasso Site for an airport.

Plaintiff Lewis also claimed that the Airport Authority entered into invalid option contracts with the landowners of the Tasso site because the amount of money to be paid for the land was excessive. In summary, Plaintiff Lewis claimed that the Airport Authority and the Commission violated local, state, and federal statutes, regulations, and procedures for rezoning the subject

-2-

property. Plaintiff Lewis sought, among other things, to enjoin the Airport Authority and Commission from proceeding with construction of the new airport until there was compliance with all federal, state, and local laws.

The Trial Court eventually granted the Airport Authority's motion to dismiss and, thereafter, granted the Commission's motion for summary judgment. Because the allegations against the defendants were dismissed on different types of motions and because the issues are different with respect to the two defendants, we will discuss the pertinent facts and issues as to the two defendants separately.

A.      The Airport Authority.

In December of 2006, the Airport Authority filed a motion to dismiss claiming Plaintiff Lewis lacked standing to prosecute the petition and that Plaintiff Lewis failed to state a claim upon which relief could be granted. The Airport Authority asserted that the rezoning bore a reasonable relation to the public health, safety and morals and must be sustained as a valid exercise of the police power. The Airport Authority further claimed that Plaintiff Lewis lacked standing to challenge the validity of the option contracts and that Tenn. Code Ann. §§ 42-3-102 and 42-3-108(a)(3) authorized the Airport Authority to enter into those option contracts. The Airport Authority then claimed that the petition failed to identify any state or federal regulations that allegedly were violated and that Plaintiff Lewis failed to establish that any of those unidentified regulations created a private cause of action. As to Plaintiff Lewis' claim that taxpayer funds were improperly used, the Airport Authority maintained that he could not establish taxpayer standing enabling him to go forward with his various claims because he did not reside within the Cleveland city limits.

Following a hearing on the motion to dismiss, the Trial Court issued its ruling from the bench which later was incorporated into an order dismissing the Airport Authority. The Trial Court stated:

> I do find from the pleadings that are now before the Court and the briefs in support of those pleadings, except to the extent that those briefs might state anything which is not in the pleadings, that the complaint fails to state a cause of action against the airport authority and that the plaintiff has no standing with respect to the airport authority.…
>
> Despite extensive questioning … by the Court, I have no concept in my mind that would allow the matter to go forward on determination of whether the airport authority has acted improperly in any way either from a constitutional standpoint or from a state statutory standpoint. And I don't know about the standpoint of the FAA, that would be between the FAA and the airport authority, and I certainly would not deal with that.

Over and over the plaintiff says that the airport authority has violated statutes and regulations, but all we have is a lot of forest and no trees pointed out that the Court can grasp and understand where it might properly exercise jurisdiction with respect to looking into the motivations of the airport authority. There is no – there's not even a general allegation of fraud; there is simply a – the word is used a couple of times. But there is nothing in the pleadings at all, no allegations whatsoever which would cause the Court to think that the case should go forward against the airport authority on some ground of fraud.

And certainly the funds paid for options, the amount of those options, those don't support anything, not anything that the Court should be looking into absent specific allegations of wrongdoing because the Court would not even be able to make a judgment about that. And if that were the case, anytime a public entity purchases land as opposed to exercising the power of eminent domain, which apparently was not available to the airport authority, we would be getting into cost of the price of land and that's not appropriate except for specific allegations of fraud or arbitrary action or capricious action on behalf of the governmental entity.

I cannot imagine that the Court could decide that the airport authority was in error in not specifically considering different areas of the county for the airport and then making some kind of large deal about that. I cannot see how that would be an appropriate way to act, but that's not for me to judge. But what I say is the way the airport authority has acted according to the allegations that are before the Court is totally appropriate. I don't think the airport authority has to consider certain tracts of land or certain areas before making a decision. I think that's a matter within the judgment of the airport authority.

With respect to Mr. Lewis … it's my opinion that as the complaint is now framed he is without standing to bring this lawsuit. He is not a city taxpayer. There's nothing in the complaint that would indicate that he is a landowner in Bradley County. He has alleged no specific injury to himself. He has, as I've said before, alleged no specific illegality on behalf of the airport authority and he made no prior demand which could be corrected by the airport authority, that is, demand to correct an illegality.

In fact, he said several times in the brief filed on his behalf that he was bringing this [lawsuit] strictly as a state and federal taxpayer. Well, that would mean that anybody literally, based on that

-4-

premise, in the state of Tennessee could file a lawsuit against the airport authority. So as to the complaint as framed at this time, I think that Mr. Lewis has no standing to bring the lawsuit against the airport authority.…

And in summation, I'll just say that this Court has no authority to conduct its own study or to substitute its judgment for a duly-appointed statutory airport authority. Whether this site is appropriate is for the airport authority to decide in conjunction with state and federal officials, and this Court has no jurisdiction to interfere with that whatsoever based on the allegations which are not before the Court.

So, therefore, the action against the airport authority is dismissed.…

B.      The Bradley County Commission.

The Commission filed a motion for summary judgment which was granted by the Trial Court. As pertinent to this appeal, Plaintiffs[1] claim the Trial Court erred in several respects. Plaintiffs claim summary judgment was inappropriate because there were material factual issues as to whether: (1) Plaintiffs were given proper statutory notice of the hearing on the rezoning request; (2) the rezoning request was properly before the Commission; (3) the Commission violated internal procedures when a substitute motion to approve the rezoning request was passed by a majority of the Commission; (4) the Commission violated the Open Meetings Act; and (5) the hearing wherein the rezoning request was approved was conducted lawfully. Based on all of these specific attacks, Plaintiffs' final issue is a general claim that summary judgment was not appropriate.

When granting the Commission's motion for summary judgment, the Trial Court stated, in part, as follows:

It's important to bear in mind here the role that the judiciary plays in issues such as this. The Court has authority to declare invalid an action by the County Commission only if it is clearly arbitrary, unreasonable, capricious, or is plainly contrary to the zoning laws, and that is not the case here. The Court also has other authority, and that is that a resolution by a legislative body, any legislative body, including the general assembly, can be declared invalid if it's contrary to due process or if it violates other constitutional provisions. And the Court can certainly declare invalid the action of the County

_____

[1] As discussed more fully later in this Opinion at footnote 3, by the time the Trial Court granted the Commission's motion for summary judgment, Herbert J. Haney had been added as an additional named plaintiff.

Commission if it violates a state statute. But other than that, the Court does not sit in judgment of the action of the County Commission, or in judgment of the internal procedures it establishes to conduct the people's business. And anybody can see that there are good reasons for that.… [The] determination to expand or build a new airport and then the location of a new airport has been one of the really great public issues in this county for some time, and it is one which has received appropriate media coverage.… And only someone who would not notice any kind of public notice could have failed to be aware of the progress of this matter.

There's no question in this case but that the two plaintiffs here in court received far greater notice that due process requires and the statute requires. They both admit they had actual notice.… And I find no facts, that is, known facts, which would justify a finding that there was any railroading of this project or that anything was done other than what the public interest required, knowing that there will always be people who would be against the project … based on their location. That is just the nature of a public project such as this.

After finding that the undisputed material facts established that Plaintiffs received proper notice as required by the rezoning statutes and due process, the Trial Court concluded that the rezoning request properly was before the Commission. According to the Trial Court:

The rezoning request was forwarded to the Bradley County Commission without a recommendation from the Planning Commission. The objection to that is it was submitted without approval, and that's a question of law. The Court finds it as a matter of law that … the action was appropriate and within the authority of both the staff of the Planning Commission and the County Commission to accept and consider the rezoning request in accordance with the requirements of the law.… Bradley County Commission has the authority to [approve] a rezoning request, which has been reviewed but not approved by the Bradley County Regional Planning Commission.…

As to the remaining issues, the Trial Court concluded that the Commission had properly followed its internal policies when a substitute motion was passed by the Commission. Finally, the Trial Court determined that the Open Meetings Act had not been violated, and that the meeting on August 21, 2006, was conducted lawfully.

## II. The Issues

There are several issues raised on appeal with respect to each of the defendants. The issues raised by one or both of the plaintiffs, which we quote, are as follows:

A.   The Airport Authority.

1.   Did the trial court err in granting [the Airport Authority's] Motion to Dismiss for Lack of Standing?

2.   Did the trial court err in granting [the Airport Authority's] Motion to Dismiss because the complaint fails to state a claim upon which relief can be granted?

3.   Did the trial court err in granting [the Airport Authority's] Motion to dismiss on the basis of immunity?

4.   Did the trial court err in granting [the Airport Authority's] Motion to Dismiss because no allegations of misconduct were made with particularity?

B.   The Bradley County Commission.

1.   Did the trial court err in granting summary judgment to the Bradley County Commission?

2.   Did the Court commit error in finding compliance with the notice requirements of the rezoning statutes?

3.   Did the Court commit error in finding that the rezoning request was properly before the County Commission?

4.   Did the Court err it its interpretation of the procedural rules of the Bradley County Commission that a vote to substitute a motion is a vote on the original, pending motion?

5.   Did the Court err in finding no violation of the Open Meetings law?

6.   Did the Court err in finding that the conduct of the public hearing by the Bradley County Commission on August 21, 200[6], was a lawful public hearing?

### III. Discussion

A.   The Airport Authority.

Our standard of review as to the granting of a motion to dismiss is set out in *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714 (Tenn. 1997). In *Stein*, our Supreme Court explained:

> A Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. In considering a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d); *Owens v. Truckstops of America*, 915 S.W.2d 420, 424 (Tenn. 1996); *Cook, supra*.

*Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

As indicated in the Trial Court's opinion, Plaintiff Lewis' lawsuit against the Airport Authority is premised on his standing as a taxpayer. In *City of New Johnsonville v. Handley*, No. M2003-00549-COA-R3-CV, 2005 WL 1981810 (Tenn. Ct. App. Aug. 16, 2005), *perm. app. denied Feb. 6, 2006*, this Court discussed at length the issue of taxpayer standing. We stated:

> "A citizen's standing to sue a governmental entity is a threshold issue that should be resolved before addressing the merits of the case." *Ragsdale v. City of Memphis*, 70 S.W.3d 56, 62 (Tenn. Ct. App. 2001). As our supreme court previously stated in a similar case:
>
>> The initial question is whether our courts will entertain a taxpayer suit contesting the legality of payments made to county officials from public funds; that is, whether a taxpayer/citizen has standing to litigate the issue presented in the complaint.
>>
>> It is not at this point appropriate to examine the merits of the ultimate question. The Court should determine whether a party may litigate the legality of a public officer's payments to himself, without first deciding whether those payments are, in fact and law, illegal. Because citizen suits do burden the

conduct of public affairs, a defendant entity or officer should not be obliged to defend on the merits if he is entitled to a dismissal for lack of standing. Nor should the court critique the conduct of public officials if the cause is not justiciable.

*Cobb v. Shelby County Bd. of Commissioners*, 771 S.W.2d 124, 125 (Tenn. 1989). Standing is a judge-made doctrine used by the courts of this state "'to refuse to determine the merits of a legal controversy irrespective of its correctness where the party advancing it is not properly situated to prosecute the action.'" *Phillips v. County of Anderson*, No. E2000-01204-COA-R3-CV, 2001 Tenn. App. LEXIS 308, at *9, 2001 WL 456065 (Tenn. Ct. App. Apr. 30, 2001) (quoting *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976)). Accordingly, we will begin by addressing the Taxpayers' first issue - whether they have standing to challenge the conveyance of real property from the municipality to an elected official of that municipality.

"The rule in Tennessee is well established that citizens and taxpayers are without standing to maintain a lawsuit to restrain or direct governmental action unless they first allege and establish that they will suffer some special injury not common to citizens and taxpayers generally." *LaFollette Med. Ctr. v. City of LaFollette*, 115 S.W.3d 500, 503 (Tenn. Ct. App. 2003) (citing *Patton v. City of Chattanooga*, 108 Tenn. 197, 65 S.W. 414, 420-21 (Tenn. 1901)); *see also Badgett v. Rogers*, 222 Tenn. 374, 436 S.W.2d 292, 294 (Tenn. 1968); *Reams v. Bd. of Mayor & Alderman of McMinnville*, 155 Tenn. 222, 291 S.W. 1067, 1068 (Tenn. 1927). As a policy justification for this general rule, the Tennessee Supreme Court has stated as follows:

On the one hand, it is undeniably the right of a taxpayer to know that his taxes are expended properly and are not unlawfully diverted or misused. On the other hand, the courts have long recognized the necessity of allowing municipal officials to perform their duties without interference from frequent and possibly frivolous litigation and the inexpedience of putting municipal officers at hazard to defend their acts whenever any member of the community sees fit to make the assault, whether for honorable motives or not. The courts have been commensurately reluctant to usurp or supersede the discretion of municipal authorities to determine which municipal undertakings are necessary and appropriate.

*Badgett*, 436 S.W.2d at 293-94; *see also Parks v. Alexander*, 608 S.W.2d 881, 885 (Tenn. Ct. App. 1980) ("The generally acknowledged purpose of this requirement of special damage or private harm to the individual rests in the public policy of protecting public corporations from a profusion of suits.").

However, the general rule regarding taxpayer standing is not without exception. "[T]he courts have recognized an exception to the general rule where it is asserted that the assessment or levy of a tax is illegal or that public funds are misused or unlawfully diverted from stated purposes." *Badgett*, 436 S.W.2d at 294; *see also LaFollette Med. Ctr.*, 115 S.W.3d at 504. The Taxpayers in the instant case, being unable to establish any specific injury not sustained by the citizens of the City in general, rely on this exception to assert they possess standing to contest the land transaction between the City and Councilman Handley. Specifically, the Taxpayers seek to establish that the land transaction at issue constituted an illegal use of "public funds."

In order for a taxpayer to have standing to challenge the legality of the expenditure of public funds, the following elements must be found to exist: (1) the plaintiff/taxpayers have taxpayer status; (2) the taxpayers allege a specific illegality in the expenditure of public funds; and (3) the taxpayers have made a prior demand on the governmental entity asking it to correct the alleged illegality. *Cobb v. Shelby County Bd. of Commissioners*, 771 S.W.2d 124, 126 (Tenn. 1989); *Ragsdale v. City of Memphis*, 70 S.W.3d 56, 62 (Tenn. Ct. App. 2001).

*City of New Johnsonville*, 2005 WL 1981810, at \*12-13.[2]

In his brief on appeal, Plaintiff Lewis states the following with respect to his claimed taxpayer standing:

[Plaintiff] has filed this lawsuit on behalf of himself and others who are similarly situated. That is, homeowners and residents adjacent to or in the immediate vicinity of the Tasso Site. [Plaintiff]

---

[2] In the *Lafollette Medical Center* case referenced by this Court in *City of New Johnsonville*, the fraud exception was used by the plaintiffs in an attempt to circumvent the requirement that there be a special injury. *Lafollette Medical Center*, 115 S.W.3d at 504. We do not think that the fraud exception can be used to circumvent the requirement that a plaintiff have taxpayer status. In other words, as applied to the present case, the fraud exception could not be used by non-city taxpayers to challenge the use of city taxes. As the Trial Court correctly noted, to hold otherwise would "mean that anybody literally, based on that premise, in the state of Tennessee could file a lawsuit against the airport authority."

alleges that he and they will be damaged by[,] among other things, depressed property value, loss of quiet and peaceful enjoyment of their homes and "the additional tax burden that will be imposed on the citizens of Bradley County...."

As stated above, this Court in *City of New Johnsonville* acknowledged that the Supreme Court in *Cobb* required three elements to establish taxpayer standing: (1) taxpayer status; (2) specific illegality in the expenditure of public funds; and (3) the taxpayer has made a prior demand on the governmental entity asking it to correct the claimed illegality. In the present case, the Airport Authority is a governmental entity created not by Bradley County but by the City of Cleveland. Plaintiff Lewis does not allege that he is a taxpayer in the City of Cleveland. Rather, he alleges that he is a taxpayer from Bradley County. The tax revenue spent by the Airport Authority was from city funds, as opposed to county funds.[3] Therefore, Plaintiff cannot establish the first of the three elements that must be met in order for him to proceed as a taxpayer in a lawsuit against the Airport Authority. Likewise, Plaintiff has not alleged that he made a prior demand on the Airport Authority, as required by the third element discussed by our Supreme Court in *Cobb v. Shelby County Bd. of Comm'rs*, 771 S.W.2d 124 (Tenn. 1989). In discussing this third element, our Supreme Court stated:

> Taxpayers have a sufficient interest in the disposition of public funds to present the issue in an adversary fashion, but due consideration for the conduct of public affairs requires that plaintiffs first have notified appropriate officials of the illegality and given them an opportunity to take corrective action short of litigation. The complaint must allege a specific legal prohibition on the disputed use of funds or demonstrate that it is outside the grant of authority to the local government. It has always been recognized that a taxpayer/citizen

---

[3] Whenever the Trial Court indicated that there were significant problems with the petition, Plaintiff would seek to amend the petition. After the Trial Court announced from the bench that it was granting the Airport Authority's motion to dismiss, Plaintiff filed a second motion to amend the petition, this time seeking to add a new plaintiff, Mr. Herbert J. Haney ("Haney"). The second amended petition does not specifically allege that Haney lives in the Cleveland municipal city limits. The residential addresses for Lewis and Haney show that both plaintiffs live on Old Charleston Road. Although the Trial Court allowed the petition to be amended yet again, the Trial Court nevertheless concluded that Haney also did not have standing as to the Airport Authority. The Plaintiffs' brief on appeal does not differentiate between Lewis and Haney with regard to their argument that there is standing and there is no claim on appeal that either Plaintiff lives in the Cleveland city limits or pays city taxes. The Airport Authority argues on appeal that Haney is not a proper party to the appeal as to the Airport Authority because the order dismissing the Airport Authority was entered prior to the Trial Court's order allowing Lewis to amend the petition a second time and add Haney as a party. Because Plaintiffs' brief does not differentiate in any way between the two plaintiffs, it is difficult to determine if Haney actually is appealing as to the Airport Authority. In the standing argument of Plaintiffs' brief, only one "Appellant" is referred to, and we assume that "Appellant" is Lewis. For example, the brief states: "*Appellant* has standing to sue MAA ..." (emphasis added) "Appellant" is referred to in the singular throughout the section of the brief addressing standing. Because the brief seems to indicate that only Lewis is appealing as to the Airport Authority, we agree with the Airport Authority that Haney should not be considered a party to the appeal as to the Airport Authority. Accordingly, we will refer to Lewis as "Plaintiff" in this opinion when referring to the claims against the Airport Authority. We will refer to both Lewis and Haney as "Plaintiffs" when discussing the claims against the Commission.

-11-

has standing to challenge "illegal" uses of public funds but not "improvident" ones - "the wisdom, policy, injurious tendency, or mischievous consequences of a statute or ordinance are not open to inquiry." *Soukup v. Sell*, 171 Tenn. 437, 441, 104 S.W.2d 830, 831 (1937).

*Cobb*, 771 S.W.2d at 126.

We further conclude that because Plaintiff's taxpayer dollars are not being spent by the Airport Authority, he cannot establish a "special injury" not common to the body of citizens as a whole. In fact, he cannot show any injury at all by the use of city funds when he is not a city taxpayer.

Based on the foregoing, we conclude that the Trial Court did not err in granting the Airport Authority's motion to dismiss because Plaintiff lacked taxpayer status and otherwise failed factually to allege compliance with all three of the required elements discussed by this Court in *City of New Johnsonville, supra*, and referenced by the Supreme Court in *Cobb*, *supra*, all of which are necessary to have taxpayer standing. Because we affirm the Trial Court's decision that Plaintiff lacked standing, Plaintiff's remaining issues with respect to the Airport Authority are pretermitted.

B.     The Bradley County Commission.

The Trial Court dismissed Plaintiffs' claims against the Commission on summary judgment. In *Teter v. Republic Parking System, Inc.*, 181 S.W.3d 330 (Tenn. 2005), our Supreme Court reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment. The Court stated:

> The purpose of summary judgment is to resolve controlling issues of law rather than to find facts or resolve disputed issues of fact. *Bellamy v. Fed. Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). In reviewing the record, the appellate court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). And because this inquiry involves a question of law only, the standard of review is de novo with no presumption of correctness attached to the trial court's conclusions. *See Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Teter*, 181 S.W.3d at 337.

Plaintiffs' first argument as to their claims against the Commission is that they were not given the statutorily required 15 days notice before the zoning regulation could be amended. As pertinent to this appeal, Tenn. Code Ann. § 13-7-105(b)(1) (1999) provides that before a county legislative body can amend a zoning ordinance, "the county legislative body shall hold a public hearing thereon, at least fifteen (15) days' notice of the time and place of which shall be given by at least one (1) publication in a newspaper of general circulation in the county.…" In Plaintiffs' brief on appeal, they state:

> On August 6, 2006, a notice was published in the *Cleveland Daily Banner* of a "public hearing" to hear "public comment concerning the request to rezone from Forestry/Agricultural (FAR) to Special Impact Industrial (I-2) located on Michigan Avenue and Dry Wall Road within fifteen days, specifically on August 21, 2006, at 10:00 a.m."

Plaintiffs argue that this was not fifteen days notice. We are unclear how a notice published on August 6 giving notice of a hearing on August 21 can be deemed anything less than fifteen days notice. If August 7 was the first day after publication of the notice, which it was, then August 21 would be the fifteenth day after publication of the notice. We therefore reject Plaintiffs' argument that they were given less than the statutorily required 15 days notice.

Plaintiffs further challenge the sufficiency of letters sent to abutting property owners as well as whether Article VII of the Bradley County Zoning Resolution was complied with by the Commission. Article VII requires that a "rezoning sign with the pertinent information" be posted on the property where the rezoning is requested. The undisputed evidence shows that three such signs were posted on the property subject to the rezoning request and these signs notified the public that an application to rezone the property had been filed and further provided a telephone number to call if there were questions about the rezoning request.

In addition to the three signs that were placed on the property, the adjoining landowners received notices in the mail stating that:

> The Bradley County Regional Planning Commission has received a request to rezone the following property:
>
> Michigan Ave
> Tax Map 35 Parcels 47.0, 40.0, 41.0, 11.02, 59.0, 11.04, 12.0, 60.0
> &
> Map 35J Group B Parcel 2
>
> (See enclosed map)
>
> Present Zoning Classification:      Forestry, Agricultural and Residential (FAR)

Proposed Zoning classification:      <u>Special Impact Industrial (I-2)</u>

This notification is sent to all property owners adjoining and all property owners directly across the street from the property.

The Bradley County Regional Planning Commission will consider this request on Tuesday, July 11, 2006 at 6:00 PM. The meeting will be held at the Bradley County Courthouse.

The grey area in the attached map shows the location of the proposed rezoning.

If you have any questions, please call Corey Divel at (423) 728-7108.

The notice was mailed to approximately 36 adjoining or across the street landowners. Plaintiffs claim the notices are fatally deficient because they did not expressly state that if rezoned, the land would be used for an airport. Our Supreme Court addressed a similar argument in *Clapp v. Knox County*, 273 S.W.2d 694 (Tenn. 1954) wherein it was argued that notice was insufficient because it merely stated that certain property would be rezoned from one classification to another. The Court disagreed, stating:

> The notice that was published was that 'the following amendment to the Knox County zoning regulations' would be presented, etc., to the Quarterly County Court at the next meeting after 30 days from the date, and the notice set forth whose property would be rezoned and where it was situated. This is a substantial compliance with the provisions of the statute. It is shown on the face of this notice that it is on the petition of Roy Brown, and it shows the change in the zoning classification that he desires and gives a complete description of his property and also notifies the people where they can go, the room number of the Planning Commission, and see how this works out on the map and it is really on this map that the changes are made. Thus it seems that there is a sufficient publication of the amendment desired….

*Id.* at 699.

Although the notices did not explicitly state that the land was being considered for rezoning as an airport, the notices did provide, along with other information, the requested rezoning classification. There was sufficient information provided for the individuals receiving the notice to make further inquiry if they wished to do so. *See Irene Neighborhood Ass'n v. Quality Life, LLC*, No. W2001-00474-COA-R3-CV, 2002 WL 1050264, at *7 (Tenn. Ct. App. May 24, 2002), *no appl. perm. appeal filed* ("[W]here circumstances are such that a reasonably prudent person should make inquiries, that person is charged with knowledge of the facts reasonable inquiry would have revealed.")(quoting *Bennett v. City Council of Las Cruces*, 973 P.2d 871, 874 (N.M. Ct. App. 1998).

-14-

The sufficiency of the notice is further established by the fact that a petition containing 456 signatures from citizens opposing the rezoning was given to the Commission at the August 21, 2006, meeting, at which numerous members of the public addressed the Commission regarding the proposed rezoning. We conclude that the notices were sufficient.

Plaintiffs' next issues surround whether the rezoning request properly was before the Commission and whether the Commission's August 21, 2006, meeting was a lawful public hearing. In support of its motion for summary judgment, the Commission filed fifteen affidavits, including the affidavit of Corey Divel ("Divel"), a County Planner employed by Bradley County.[4] According to Divel:

1. My name is Corey Divel and I am over eighteen years of age and make this affidavit based upon my personal knowledge. I am employed by Bradley County and serve as the County Planner. I have been employed in this capacity since August, 2005. As a part of my duties as County Planner I process property rezoning request applications.

2. It is the usual and customary procedure in the rezoning process for an applicant to apply for a building permit after the property has been rezoned. A site plan is prepared and submitted with the application for a building permit. It is not necessary for a site plan to be tendered and attached to a rezoning application. The Cleveland Municipal Airport Authority was not required to submit a site plan with its rezoning application.

3. The Cleveland Municipal Airport Authority was not required to submit a screening plan with its rezoning application.

4. It is the usual and customary procedure for the Bradley County Regional Planning Commission to review rezoning applications and recommend approval, disapproval or suggestions to the County legislative body. It is not a requirement that the BCRPC render a favorable opinion prior to submitting the rezoning request to the Bradley County Commission.

5. The Cleveland Municipal Airport's Rezoning Request was considered for approval, disapproval or suggestion to the Bradley County Regional Planning Commission on two separate occasions; July 11, 2006 and August 1, 2006.

---

[4] As a response to the Commissions's motion for summary judgment, Plaintiffs filed a motion for partial summary judgment. Plaintiffs filed no affidavits with their motion or in response to the Commissions's motion. Although the depositions of the Plaintiffs were filed, the depositions were not germane to most of the issues on appeal.

6.     It is standard procedure for the staff of the Bradley County Planning Office to place on the County Commission agenda a request for rezoning after the presentation to the BCRPC.

7.     The staff of the Bradley County Regional Planning Office attempted to identify all property owners who owned property either adjacent to or across the street from the property requested to be rezoned.

8.     I prepared and mailed the notice of rezoning to the adjoining property owners and property owners located across the street from the Tasso site identified in Exhibit 2 of the Transcript of Proceedings. As part of the notice I attached the map identified in Exhibit 2.

9.     As part of my duties regarding the rezoning request of the Tasso site I posted three rezoning signs notifying the public at large that a rezoning application had been filed regarding the subject property. Two of the rezoning signs were placed on the subject property on or about June 26, 2006. The third sign was placed on the property on or about July 3, 2006.

10.     I appeared before the Bradley County Regional Planning Commission on July 11, 2006 and August 1, 2006. I reported to the BCRPC that [the] land use plan designates the subject property as future industrial and I recommended that the rezoning be approved.

11.     It is standard procedure for staff of the Bradley County Regional Planning Office to place on the agenda of the Bradley County Commission rezoning applications regardless of the BCRPC's decision.

12.     Exhibit 1 of the Transcript of Proceedings filed herein is a true and accurate copy of the rezoning application dated June 26, 2006 and signed by Lou Patten.

13.     Exhibit 2 of the Transcript of Proceedings is a true and accurate copy of the notice sent to the adjoining and across the street property owners.

14.     Exhibit 3 of the Transcript of Proceedings is a true and accurate copy of the certificate of mailing of the notice of the rezoning to adjoining and across the street property owners dated July 3, 2006.

15. Bradley County Planning Office posted three rezoning signs on the tract of property which was subject to the rezoning request.

16. Exhibit 4 of the Transcript of Proceedings is a map which reflects the approximate location of the rezoning signs which were posted.

17. Exhibit 5 of the Transcript of Proceedings is a true and accurate copy of the agenda of the Bradley County Regional Planning Commission's meeting for July 11, 2006.

18. The Bradley County Regional Planning Commission (hereafter "BCRPC") held a public hearing on July 11, 2006. The Cleveland Municipal Airport Authority's request to rezone the property on Michigan Avenue and Dry Valley Road from FAR to I-2 was on the agenda and discussed at length.

19. Exhibit 6 of the Transcript of Proceedings is a true and accurate copy of the minutes of the Bradley County Regional Planning Commission meeting of July 11, 2006.

20. Exhibit 7 of the Transcript of Proceedings is a true and accurate copy of the agenda of the Bradley County Regional Planning Commission's meeting for August 1, 2006.

21. Exhibit 8 of the Transcript of Proceedings is a true and accurate copy of the minutes of the Bradley County Regional Planning Commission meeting of August 1, 2006.

22. Bradley County Commission has the authority to approve a rezoning request which has been reviewed but not approved by the Bradley County Regional Planning Commission.

23. Exhibit 9 of the Transcript of Proceedings is a true and accurate copy of the legal publication notice regarding the rezoning hearing on Monday, August 21, 2006 at 10:00 am.

24. Exhibit 15 of the Transcript of Proceedings is a true and accurate copy of the Bradley County Land Use Plan.

25. Exhibit 17 of the Transcript of Proceedings is a true and accurate copy of the Zoning Resolution of Bradley County, Tennessee.

-17-

26. It is Bradley County's usual and customary procedure in the rezoning process for an applicant to apply for a building permit after the property has been rezoned. A site plan is prepared and submitted with the application for a building permit. It is not necessary for a site plan to be tendered and attached to a rezoning application.

27. The rezoning request was submitted for approval, disapproval or suggestion to the Bradley County Regional Planning Commission on two separate occasions; July 11, 2006 and August 1, 2006. It was discussed at length by both proponents and opponents.

28. It is usual and customary procedure for the staff of the Bradley County Planning Office to place on the County Commission agenda a request for rezoning after the presentation to BCRPC.

The Commission also filed the affidavits of several Bradley County Commissioners who were serving during the relevant time frame. The affidavit of Commissioner Bill Varnell provides, in relevant part:

3. It has been the usual and customary procedure for a commissioner to make a "substitute motion". If the vote passes by a majority vote the action requested for in the substitute motion is enacted. The commission does not hold a second vote on the action requested for in the substitute motion.

4. I never deliberated in private with any other members of the Bradley County Commission toward a decision or made a decision regarding the rezoning of the Tasso site in violation of the open meetings act.

The Commission also filed a virtually identical affidavit of Commissioner Matthew Brown.

The Commission also filed the affidavit of Keith Holloway, who was the Chairman of the Bradley County Regional Planning Commission at the relevant time. According to Holloway:

3. On July 11, 2006 after proper public notice the rezoning request of the Tasso site came before the Planning Commission. Public debate was held regarding the issue and the Planning Commission continued the request until the next meeting of August 1, 2006 to obtain further public comment.

4. On August 1, 2006 the rezoning request, after proper public notice, was again placed on the agenda and discussed at the public meeting of the Bradley County Planning Commission. At the

conclusion of the discussion a motion was made by then secretary Tony Young to approve the rezoning request of the Cleveland Municipal Airport Authority. The motion did not receive a second and I announced that the matter would be forwarded without a recommendation from the Planning Commission to the Bradley County Commission for action for the Monday, August 21st 10:00 am meeting.

5.    It is the usual and customary procedure for the Bradley County Regional Planning Commission to review rezoning applications and forward the applications to the Bradley County Commission irregardless (sic) of whether the BCRPC recommended approval, disapproval or made suggestions to the County legislative [body]. It is not a requirement that the BCRPC render a favorable opinion prior to submitting the rezoning request to the Bradley County Commission.

Plaintiffs claim that the request for rezoning never was acted upon by the Bradley County Regional Planning Commission and, therefore, was not properly before the Commission. Tenn. Code Ann. § 13-7-105(a) (1999) provides as follows:

The county legislative body may, from time to time, amend the number, shape, boundary, area or any regulation of or within any district or districts or any other provision of any zoning ordinance; but any such amendment shall not be made or become effective unless the same be first submitted for approval, disapproval or suggestions to the regional planning commission of the region in which the territory covered by the ordinance is located, and, if such regional planning commission disapproves within thirty (30) days after such submission, such amendment shall require the favorable vote of a majority of the entire membership of the county legislative body.

Initially, we note Plaintiffs do not contend that the rezoning request was passed by the Commission with less than a majority vote. In *Westland West Cmty. Ass'n v. Knox County*, 948 S.W.2d 281 (Tenn. 1997) the Supreme Court stated that pursuant to Tenn. Code Ann. § 13-7-105(a), "[a] proposed amendment to a zoning scheme must first be submitted to the regional planning commission. If a proposed zoning amendment is not first presented to the regional planning commission, the county commission is devoid of jurisdiction to act upon the proposal." *Id.* at 283.

We conclude that the rezoning request was submitted first to the Regional Planning Commission. The Regional Planning Commission fully considered the request on two different occasions with public input. The statute provides that if a regional planning commission denies the request within thirty days, the county legislative body can consider the request and grant approval by a majority vote. Even thought the Regional Planning Commission in the present case did not

-19-

explicitly approve or reject the request, it nevertheless was given due consideration. A motion was made by a member of the Regional Planning Commission to approve the rezoning, but the motion died after there was no second. At that point, there was nothing else for the Regional Planning Commission to do and its purpose was served. The lack of a formal approval or denial equates to a denial and cannot be considered any differently than an express denial for purposes of proceeding to the next step in the process. Therefore, we conclude that the Commission had jurisdiction because the requirements of Tenn. Code Ann. § 13-7-105(a) were met.

Plaintiffs also challenge the internal procedure by which the vote passing the rezoning was accomplished. We conclude that the procedure utilized by the Commission was entirely consistent with the Commission's Rules of Procedure. The minutes from the August 21, 2006, Commission meeting were authenticated through affidavits and show that an original motion to deny the rezoning was made and then seconded. Thereafter, a substitute motion to approve the rezoning was made and seconded. A vote then took place on the substituted motion which passed by a vote of 10 to 4 in favor of rezoning. Because the substitute motion was passed by a clear majority, the minutes provide that "therefore no vote was taken on the original motion." The Commission's Rules of Procedure provide as follows:

### Rule 5 - MOTIONS

5A. INTRODUCTION AND DEBATE: members may only make Motions. No motion shall be debated until the same is seconded and stated by the Chairperson.

5B. MOTIONS IN WRITING: When a motion is made and seconded, it shall be reduced to writing by the Clerk, and read by the Chairperson prior to any debate or vote.

5C. REQUIRED ROLL CALL: Motions shall be put to the Board for a roll call.

*5D. AMENDMENTS TO A MOTION: Amendments require a second. Debate may follow an amended motion. No action shall be taken on the original motion until the amended motion has been voted upon.* (emphasis in the original).

The undisputed material facts demonstrate that after the original motion was made and seconded, a substitute motion then was made and seconded. Because the substitute motion approving the requested rezoning was passed by a vote of 10 to 4 in favor of the amendment, there was no need to take a vote on the original motion. Plaintiffs' argument that the Commission having passed the substituted motion approving the requested amendment should then have voted on the original motion to deny the requested rezoning is not mandated either by the Commission's Rules or common sense. The Commission's actions were in compliance with its Rules.

Plaintiffs also claim that the Commission violated the Open Meeting Act at its work session on August 14, 2006. The County claims that the work sessions are regularly scheduled on the second and fourth Monday of each month and that they are open to the public. Plaintiffs do not claim otherwise, but rather claim there was a violation of the Open Meetings Act because no agenda was published in the newspaper. Tenn. Code Ann. § 8-44-101 (2002) provides that "[t]he general assembly hereby declares it to be the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret." The minutes from the August 14th work session reveal that a representative from the Municipal Airport Authority was present and answered several questions from the Commission about the proposed airport.[5]

Plaintiffs further state in their brief:

The Petition alleges, on information and belief, that 'certain members' of the County Commission violated the Open Meetings law by meeting and committing to support the rezoning.

As set forth previously, the Commission filed several affidavits from members of the Commission denying that the Open Meetings Act was violated. Plaintiffs offered no affidavits, or any other evidence for that matter, that creates a genuine issue of material fact as to whether the Commission violated the Open Meetings Act. Unsupported allegations in a petition are insufficient to withstand a properly supported motion for summary judgment.

There is nothing in the record to suggest that the August 14, 2006, meeting was anything other than a meeting that was open to the public. The Commission gathered information at this regularly scheduled public meeting about the proposed airport, and Plaintiffs have offered neither the Trial Court nor this Court anything indicating that this information gathering meeting was not open to the public. Further, Plaintiffs have not created a genuine issue of material fact as to whether the Open Meetings Act was violated at any other time. The Trial Court did not err as to this issue as the public's business was not conducted in secret.

Plaintiffs' final issue is their claim that a spokesperson for certain interested parties was not allowed to speak at the August 21, 2006, public hearing. Plaintiffs claim this rendered that meeting unlawful. In the "Facts" section of Plaintiffs' brief, they state that a spokesperson was not allowed to speak, but cite us to nowhere in the record where that allegation is substantiated. Plaintiffs merely cite to the amended complaint.[6] The Commission claims that the Chairman of the

[5] It also appears that several questions from members of the general public were answered. The names of the presenter and members of the Commission were identified when they spoke. Other persons, presumably members of the public, were identified as "Man 1" and "Man 2".

[6] The problem of Plaintiffs not citing to the record is compounded by a brief filed by Plaintiffs with the Trial Court in response to the Commission's motion for summary judgment. In this brief, Plaintiffs state it was the August 14, 2006, work session where a representative allegedly was not allowed to speak, as opposed to the August 21, 2006, meeting. The brief filed with the Trial Court likewise does not contain a citation to the record.

Commission properly set a five minute time limit with respect to public comments. On this particular issue, the Trial Court found:

> As for the limitation of the five minutes per person to speak to the County Commission, the County Commission has the right to set a reasonable limitation on persons who address the County Commission. If it could not do that, the meetings would be chaotic. A limitation of five minutes in not even close to being unreasonable or capricious. The transcript shows that this was a very appropriate public hearing. Citizens made comments. They were very good comments. It appeared to the Court to be a very well-run meeting. The Commission cannot hear everything that everyone would like to say, by that's – that's not the issue. The issue is whether the County Commission provided a forum for a public hearing, and they certainly did.

In *Whittemore v. Brentwood Planning Comm'n*, 835 S.W.2d 11 (Tenn. Ct. App. 1992), this Court noted that:

> The Sunshine Law gives citizens the statutory right to attend the meetings of state and local governmental boards and agencies. However, it does not give citizens the right to participate actively in all public meetings nor does it require public officials to depart from their agenda or to interrupt their business to accommodate the public's demands to be heard.
>
> *  *  *
>
> We do not find that the manner in which the planning commission permitted public comment was illegal, arbitrary, or capricious. The forceable removal of a lawyer from one of the planning commission's meetings in 1986 simply does not taint the entire process. The neighboring residents' dissatisfaction with the planning commission's conduct calls for a political rather than a judicial remedy.

*Id*. at 18; *Accord*, *Souder v. Health Partners Inc.*, 997 S.W.2d 140, 150 (Tenn. Ct. App. 1998) ("While the Act requires all meetings of entities subject to the Act be open to the public, it does not guarantee all citizens the right to participate in the meetings.").

Returning to the present case, Plaintiffs have failed to create a genuine issue of material fact as to whether the challenged meeting, taken as a whole, was an open meeting for purposes of the Open Meetings Act. It clearly was. This is even more apparent when considering Plaintiffs failed to cite us to anything in the record supporting what they claim happened at the meeting. *See* Tenn. R. App. P. 27(a)(6) (requiring a brief to contain "[a] statement of facts, setting

forth the facts relevant to the issues presented for review *with appropriate references to the record*.") (emphasis added).

In summary, as to the six issues raised by Plaintiffs regarding their claims against the County Commission, we conclude: (1) the undisputed material facts demonstrate that the Commission complied with applicable notice requirements; (2) the undisputed material facts demonstrate that the rezoning request properly was before the Commission; (3) the undisputed material facts demonstrate that the Commission complied with its procedural rules pertaining to substitute motions; (4) the undisputed material facts demonstrate that there was no violation of the Open Meetings Act; (5) the undisputed material facts demonstrate that the Commission meeting on August 21, 2006, complied with the requirements of the Open Meetings Act; and (6) the undisputed material facts demonstrate that the Commission was entitled to summary judgment as a matter of law.

## IV. <u>Conclusion</u>

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are taxed to the Appellants, Frankie Lewis and Herbert Haney, and their surety.

_____
D. MICHAEL SWINEY, JUDGE